IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael Webb,                                    :
                                                 :        Case No. 1:98-CV-766
                    Petitioner,                  :
                                                 :        District Judge Susan J. Dlott
         v.                                      :
                                                 :        Magistrate Judge Michael R. Merz
Betty Mitchell, Warden,                          :
                                                 :        ORDER
                    Respondent.                  :

         This matter is before the Court on Petitioner Michael Webb's Second Amended Petition

Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus By a Person in State Custody ("Second

Amended Petition") (doc. 41); Magistrate Judge Merz's Report and Recommendation on the

Second Amended Petition ("R&R") (doc. 74) issued on March 4, 2005; Petitioner Webb's

Objections to the R&R ("First Objections") (doc. 79); and the Warden's Memorandum in

Response to Petitioner's First Objections (doc. 82); as well as Judge Merz's Supplemental

Report and Recommendation ("Supplemental R&R") (doc. 83) issued August 9, 2005; Petitioner

Webb's Objections to the Supplemental R&R ("Second Objections") (doc. 85); and the

Warden's Memorandum in Response to Petitioner's Second Objections (doc. 86).

         In both his R&R and Supplemental R&R, Judge Merz recommended that this Court deny

Webb's habeas petition.  Having reviewed the case, the Court hereby **OVERRULES** Petitioner

Webb's First Objections and Second Objections; **ADOPTS** both Judge Merz's R&R as modified

by his Supplemental R&R, and his Supplemental R&R, and **DENIES WITH PREJUDICE**

Petitioner Webb's Second Amended Petition.

## I.   FACTUAL AND PROCEDURAL HISTORY

The factual history of the events surrounding Petitoner Webb's conviction are set forth at length by Magistrate Judge Merz in the R&R.  It suffices here to summarize that Webb was accused of intentionally setting fire to his family residence in the early morning hours of November 21, 1990, at which time his wife, two daughters, and two sons were at home.  Webb's son, three year-old Michael Patrick Webb died in the blaze.  Following a jury trial, Petitioner Webb was convicted on June 25, 1991 of two counts of aggravated murder with death penalty specifications, four counts of attempted aggravated murder, and six counts of aggravated arson. The jury recommended a sentence of death on the two counts of aggravated murder and the trial court adopted the recommended sentence on July 18, 1991.

The full procedural history of this case is also set forth by Magistrate Judge Merz in the R&R.  Petitioner Webb pled fifteen claims for relief in his habeas petition.  The Warden has contended that a number of Petitioner Webb's claims are procedurally barred, but concedes that Petitioner Webb has exhausted his remedies in state court.  In the R&R, Magistrate Judge Merz recommended denying Petitioner's claims and dismissing the habeas petition with prejudice. This Court reviews de novo those portions of Magistrate Judge Merz's R&R and Supplemental R&R to which Petitioner Webb objected.  See 28 U.S.C. § 636(b)(1)(C).  Petitioner Webb has stated that he raised no objections to Magistrate Judge Merz's proposed disposition of the Third, Seventh, Ninth, Eleventh, Thirteenth, and Fourteenth Claims.  (Doc. 79 at 5.)[1]  Thus, the Court

---

[1] As Magistrate Judge Merz noted in his Supplemental R&R Petitioner Webb's First Objections are inconsistent as to which claims are uncontested.  (Doc. 83 at 1 n.1.)  In his First Objections, Petitioner Webb stated that he does not object only to Magistrate Judge Merz's *Ninth, Eleventh, Thirteenth, and Fourteenth* Claims for Relief.  (Doc. 79 at 9.)  The Court has reviewed Petitioner Webb's First and Second Objections, however, and found no place where Petitioner Webb

need not review Magistrate Judge Merz's findings as to the those claims.  See 28 U.S.C. § 636(b)(1)(C).

**II.     ANALYSIS**

**A.     First and Fourth Claims for Relief**

Petitioner Webb's First and Fourth Claims involved various instances of alleged prosecutorial misconduct during the opening statement, presentation of evidence, and final argument of the culpability portion of his trial, and also during the penalty or mitigation phase of his trial.  In the R&R, Magistrate Judge Merz held that both claims should be denied as procedurally defaulted based upon his same conclusion in his earlier Report and Recommendations On Petitioner Webb's Motion for Partial Summary Judgment ("R&R on Summary Judgment") (doc. 35), which this Court adopted (doc. 36).  In his First Objections, however, Petitioner Webb argued that Magistrate Judge Merz had erred in that finding in the R&R on Summary Judgment, and so had erred again in the R&R.  Petitioner Webb argued that, as such, this Court should consider  "the following errors on direct appeal which could be broadly construed as claims of prosecutorial misconduct:

> Comment on Petitioner's failure to testify in closing argument at the guilt phase (first assignment of error);
> Taunting the Petitioner (first assignment of error);
> Argument in the penalty phase that the terror and horror felt by the victims was an aggravating circumstance (third assignment of error);
> Argument for the death penalty after having offered a non-capital plea bargain (tenth assignment of error); and

---

in fact makes an objection to the Third or Seventh Claims for Relief.  Also, in the Conclusion to his First Objections, Petitioner Webb claims to have established only that "the Court should not adopt the [R&R] as to the First, Second, Fourth, Fifth, Sixth, Eighth, Tenth, Twelfth, and Fifteenth Claims for Relief."  (Id. at 56.)  Petitioner Webb names objections to only those claims in his Second Objections as well.  (Doc. 85 at 2.)

Adducing evidence of the bad character of Petitioner (sixteenth assignment of error).

(Doc. 79 at 12.)

In the Supplemental R&R, Magistrate Judge Merz held that Petitioner Webb was correct that the R&R was in error as to the First and Fourth Claims being procedurally defaulted, and that those claims were in fact preserved for review.  Magistrate Judge Merz then reviewed on the merits Petitioner Webb's sub-claims of "prosecutorial misconduct based on allegations of 1) comments on the Petitioner's failure to testify, 2) taunting of Petitioner, and 3) adducing evidence of the bad character of the defendant."[2]  (Doc. 83 at 2.)  After such review, Magistrate Judge Merz concluded that Petitioner Webb's claims were without merit.

In his Second Objections, Petitioner Webb again objected to Magistrate Judge Merz's recommendations regarding his First and Fourth Claims.  Petitioner Webb's argument as to these claims in the Second Objections appears to be limited to his subclaims that the prosecution improperly commented on Webb's failure to testify and that a prosecutor taunted Webb during a break in the proceedings.  Specifically, Petitioner Webb alleged that during the lunch recess between the state's initial closing argument the defense's closing argument, the prosecutor commented to Webb, outside the presence of his counsel, that he couldn't believe Petitioner Webb would stoop so low as to blame his daughters.  Petitioner Webb had raised this incident in

---

[2] Magistrate Judge Merz noted that he could not find in Petitioner Webb's First or Fourth Claims the subclaims relating to a non-capital plea bargain or the aggravating circumstances of terror and horror felt by the victims.  (Id. n.2.)  Magistrate Judge Merz thus declined to consider those alleged subclaims.  This Court has reviewed Petitioner Webb's Second Amended Petition and agrees that Petitioner Webb did not raise those subclaims in his petition and so they should not be considered.  Moreover, Petitioner Webb did not challenge that finding in his Second Objections.

his second proposition of law on his appeal to the Ohio Supreme Court.  State v. Webb, 70 Ohio St.3d 325, 329, 632 N.E. 2d 1023, 1029 (Ohio 1994).  The Ohio Supreme Court rejected the argument that the prosecutor engaged in misconduct by taunting Webb into "interrupting the prosecutor's argument, then used the interruption as an excuse to comment on Webb's failure to testify."  70 Ohio St.3d at 329.  Although Magistrate Judge Merz did not, in the Supplemental R&R, specifically address the prosecutor's alleged comments to Webb during the lunch break, it appears that Magistrate Judge Merz nevertheless considered Webb's allegation regarding taunting, because Magistrate Judge Merz mentioned both Webb's claim that the prosecutor taunted him into speaking and the Ohio Supreme Court's analysis, described above, of Webb's prosecutorial misconduct claim.  (Doc. 83 at 4, 6-7.)  Magistrate Judge Merz found that the Ohio Supreme Court's opinion was neither unreasonable nor contrary to federal law.  This Court agrees.  Petitioner Webb's objection raises no other new point, nor any legal or factual error in Magistrate Judge Merz's analysis;  he simply disagrees with the outcome.  This Court therefore finds upon de novo review that Magistrate Judge Merz's analysis in the Supplemental R&R of Petitioner Webb's First and Fourth claims regarding prosecutorial misconduct was correct.  The Court overrules Petitioner Webb's objections and **DENIES** the First and Fourth Claims for Relief.

**B.**     **Second Claim for Relief**

In his second claim for relief, Petitioner Webb states almost thirty issues he contends demonstrate that he was denied the effective assistance of his trial counsel during the culpability phase of trial.  Petitioner Webb admits that he did not raise these issues on direct appeal, but rather raised them for the first time in the post-conviction relief proceedings ("PCRP") as part of

his eighteenth, twentieth, and twenty-first claims.  (Doc. #17, Appx. To Return of Writ, Tab S at 55-56, 60-66.)

The trial court denied the eighteenth and twenty-first PCRP claims as barred *by res judicata* and on the merits.  (Id., Tab U at 24-27; 29-30.)  The trial court denied the twentieth PCRP claim as barred by *res judicata* to the extent that Petitioner Webb relied on the record for the claim.  (Id., Tab U at 28.)  The trial court denied the twentieth claim on the merits to the extent that Petitioner Webb relied on the *de hors* evidence, a letter from Larry Dehus to his attorney, regarding the point of origin of the fire.  (Id., Tab U at 29.)  It also denied Petitioner Webb's motion for summary judgment, filed on the issue of the ineffective assistance of counsel and supported by four additional affidavits.  (Id., Tab U at 44-55.)  The court of appeals denied all three PCRP claims as barred by *res judicata* and upheld the denial of summary judgment. (Id., Tab X at 12-14.)   It stated that the *dehors* evidence offered did not contain new information or evidence that was not available at the time of the trial.  (Id.)

In these proceedings, Magistrate Judge Merz held in the R&R (doc. 74) and the Supplemental R&R (doc. 83) that Petitioner Webb's Second Claim was barred as procedurally defaulted.  Magistrate Judge Merz pointed out that he had found previously in the R&R on Summary Judgment that a federal court could not reexamine the Ohio courts' application of their own *res judicata* doctrine.  (Doc. 35 at 54.)  Petitioner Webb did not file objections to the R&R on Summary Judgment and this Court issued an Order Adopting the R&R on Summary Judgment (doc. 36).  Petitioner Webb now argues that habeas review should not be precluded because the state court erred in holding that the claims were barred by *res judicata* to the extent that he had submitted evidence *dehors* the record.  (Doc. 79 at 13-14.)

6

A review of Ohio *res judicata* is necessary.  The Ohio Supreme Court set forth Ohio's *res judicata* rule in 1967 as follows:

> 7. Constitutional issues cannot be considered in postconviction proceedings under Section 2953.21 et seq., Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him.
> * * * *
> 9. Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

Ohio v. Perry, 10 Ohio St.2d 175, 226 N.E.2d 104, at syllabus ¶¶ 7, 9 (1967).  The Ohio *res judicata* rule which requires that claims based solely on facts in the record be raised for the first time on direct appeal has been upheld by the Sixth Circuit as an adequate and independent state law ground for upholding a conviction.  See, e.g., Frazier v. Huffman, 343 F.3d 780, 805 amended 348 F.3d 174 (6th Cir. 2003); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001).

"Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief."  State v. Cole, 2 Ohio St.3d 112, 443 N.E.2d 169, at syllabus (1982).  On the other hand, "[t]he presentation of competent, relevant, and material evidence *dehors* the record may defeat the application of res judicata."  State v. Lawson, 103 Ohio App.3d 307, 315, 659 N.E.2d 362, 367 (1995).  A claim is not barred if a defendant, represented by new counsel on appeal, raises an issue that could not have been decided fairly without resort to evidence *dehors* the record.  State v. Smith, 17 Ohio St.3d 98, 101 n.1, 477 N.E.2d 1128, 1131

(1985). Petitioner Webb here had new counsel on appeal. In State v. Jackson, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), the Ohio Supreme Court stated that the mere presentation of *dehors* evidence is not sufficient to guarantee a right to an evidentiary hearing before the post-conviction petition is dismissed unless the affidavit contains "sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." 64 Ohio St.2d at 111.

The Sixth Circuit has stated in dicta the proposition that a district court's habeas review is not necessarily precluded when the state court's reliance on its own procedural default rule is misplaced. Greer v. Mitchell, 264 F.3d 663, 675 (6th Cir. 2001). Later cases adopted that dicta in circumstances analogous to those here. In Hill v. Mitchell, 400 F.3d 308 (6th Cir. 2005), the Ohio appellate court had denied a post-conviction relief claim as barred by *res judicata* because the issues addressed in the *dehors* affidavits submitted in support of the claim could have been presented on direct appeal. Id. at 313-14. The Sixth Circuit disagreed with the state court's application of *res judicata* stating that "ineffective-assistance claims are not barred by *res judicata* under Ohio law when evidence outside the direct-appeal record is presented." Id. at 314. Likewise, in White v. Mitchell, 431 F.3d 517 (6th Cir. 2005), the Ohio appeals court also had held that a claim of attorney ineffectiveness was barred by *res judicata*, despite the fact that petitioner had submitted *dehors* evidence in the post-conviction relief proceedings, because the claim could have been raised on direct appeal. Id. at 526-27. The Sixth Circuit again held that habeas review was permitted because of the general rule that ineffective assistance claims are not barred in Ohio when they rely on evidence outside the trial record.

Greer, Hill, and White taken together instruct that the Court should examine whether the

Ohio state courts misapplied the *res judicata* doctrine.  The Court has done so and agrees with Magistrate Judge Merz that the state courts did not misapply the *res judicata* doctrine as to Petitioner Webb's claim.  Accordingly, the Second Claim for Relief is procedurally barred. Moreover, the claim would fail on the merits even if it were not procedurally barred.

Petitioner Webb submits that his trial counsel failed by not calling Larry Dehus to refute the prosecution's expert witness testimony about the origin of the fire.  The primary *dehors* evidence Petitioner Webb submits to support this subclaim is a status communication dated March 11, 1991 from Dehus, who identifies himself as "Forensic Scientist, Certified Fire & Explosion Investigator 3199-247," to Webb's defense counsel.  (Doc. 89 ex. 1.)  Regarding the origin of the fire, Dehus states the following in relevant part:

> Certainly the first floor closet is the area of most intense burning, but that does not necessarily indicate the point of origin for this fire.  It is my feeling that it would be very difficult for anyone to establish the exact location where the gasoline vapors were ignited.

(Id.)

This letter fails to establish that Petitioner Webb's defense counsel rendered ineffective counsel at the culpability stage of trial. The Dehus letter is not an expert report and the findings therein are not stated with a reasonable degree of scientific certainty.  Moreover, the letter does not directly contradict the filings of the prosecution's witness, Chief Virgil Murphy of the Goshen Community Fire Department, that there were two points of origin for the fire, the first floor hallway closet and bathroom.  (T.p. 928, 932, 968-69, 1411, 1421-22.)  Nor does it support the testimony of Petitioner Webb's trial expert, Don Yuellig, who testified that the fire could have started in a woodburning stove in the basement.  (T.p. 1272, 1486.)  Petitioner Webb has

not established that he was prejudiced by the failure of his defense counsel to call Dehus as a trial witness.

Petitioner Webb also submitted *dehors* evidence in the form of affidavits of Martin Yant and James D. Owen that are relevant to the sub-issue of defense counsel's investigation in preparation for the culpability phase of trial. The affidavits are discussed in greater detail below as to the Twelfth Claim for Relief. It is sufficient to state here that this Court agrees with the state courts that neither affidavit contains sufficient facts to establish ineffective assistance of counsel or prejudice as a result. In conclusion, the Court overrules Petitioner Webb's objections and **DENIES** the Second Claim for Relief.

**C.      Tenth Claim for Relief**

In the Tenth Claim for Relief, Petitioner Webb asserts that he did not receive effective assistance of counsel because one of his trial attorneys, Gary Rosenhoffer, labored under an actual conflict of interest in that he represented a prosecution witness, James Pursifull, during the period he represented Petitioner Webb. (Doc. 41 at 64-65.) The issue was raised during the redirect examination of Pursifull during Petitioner Webb's trial when he was asked if he had been represented by Rosenhoffer "for a previous theft conviction." (T.p. 1130.) Pursifull did not answer the question on the record. (Id.) However, it could be inferred that Rosenhoffer represented Pursifull when the trial judge stated on the record that he had been the judge for the Pursifull matter. (Id.)

Petitioner Webb did not raise this purported conflict of interest on direct appeal. Petitioner Webb asserted the issue as potential violation of his rights for the first time in the post-conviction relief proceedings as PCRP issue twenty-four. (Doc. 17, Appx. to Return of Writ,

10

Tab S at 72.)  The trial court denied the issue on the merits and on the basis of *res judicata*.  (Id.,

Tab U at 32.)  As to the merits, the trial court stated that Rosenhoffer "end[ed] his participation

before the trial commenced."  (Id.)  To support the alternative *res judicata* holding, the trial court

stated that the issue could have been raised on appeal and found that Petitioner Webb did not

submit *dehors* evidence.  (Id.)  The court of appeals also found that the claim was barred on the

basis of *res judicata*.  (Id., Tab X at 4.)

 In these proceedings, Magistrate Judge Merz held in the R&R on Summary Judgment,

adopted by this Court's Order, and in the pending R&R and in the Supplemental R&R that the

claim was procedurally defaulted.  (Doc. 35 at 59; doc. 74 at 32; doc. 83 at 5.)  Petitioner Webb

submits that this Court is not procedurally barred from hearing the claim because the state

court's *res judicata* holding was plain error.  The Court does not understand the basis for

Petitioner's argument, but assuming *arguendo* that the state court did err, the Court nevertheless

must deny the Tenth Claim for Relief on the merits.

 Petitioner Webb has not established that there was an actual conflict of interest.

Rosenhoffer represented Webb during at least some of the initial proceedings, (t.p. vols. 18, 19),

but he is not listed as Webb's attorney of record for any of the trial proceedings, (t.p. vols. 1-17).

Further, the trial transcript suggests that Pursifull's criminal matter had ended before Webb's

trial began.  (T.p. 1130.)  Prejudice is not presumed in cases of successive representation.

Gillard v. Mitchell, 445 F.3d 883, 891 (6th Cir. 2006) (holding no conflict of interest existed

where charges against one client were dismissed before the second client went to trial).

Prejudice is presumed "only if the defendant demonstrates that counsel actively represented

conflicting interests and that an actual conflict of interest adversely affected his lawyer's

performance." Burger v. Kemp, 483 U.S. 776, 783 (1987) (internal quotations and citations omitted); see also State v. Leonard, 157 Ohio App.3d 653, 664-65, 813 N.E.2d 50, 59 (2004) (same). Petitioner Webb offers no evidence that would suggest that he was prejudiced by Rosenhoffer's prior representation of Pursifull. Petitioner Webb's Tenth Claim for Relief is **DENIED**.

**D.      Twelfth Claim for Relief**

Petitioner Webb alleges in his Twelfth Claim for Relief that his sentence is void or voidable "because of state induced error, to wit: The State of Ohio, through the State Public Defender's office, impeded the defense of the Petitioner Webb by providing an appallingly inadequate investigation for use by Petitioner Webb's counsel" at the mitigation stage of trial. (Doc. 41 at 66-68.) Before addressing Petitioner Webb's claim, it would be useful to review the testimony Petitioner Webb's defense counsel presented in mitigation. Pursuant to Ohio law, the jury was to recommend a death sentence if they found by proof beyond a reasonable doubt that the aggravating circumstances that Webb was found guilty of committing outweighed the mitigating factors. See Ohio Rev. Code § 2929.03(D). The jury was instructed, consistent with Ohio Rev. Code § 2929.04(B) that "statutory mitigating factors include the history, character, and background of the offender, and any other factors that are relevant to the issue whether the offender should be put to death." (T.p. at 136.)

At the mitigation stage, defense attorneys called ten witnesses, nine of whom were immediately family, including Webb's then-wife and daughters, and a close family friend. The witnesses testified about the death of Webb's father when Webb was twelve years old, about the fact that Webb struggled in school and finished only the ninth grade (as opposed to his siblings

12

who excelled academically), about his first daughter being born with a cleft pallet, and about the traffic accident in which his first wife was killed and his younger daughter was injured severely. (Id. at 15 *et seq.*) The witnesses then stressed that Webb was an important member of their family and that he could play a role in their lives even if he was sentenced to life imprisonment. (Id.) Petitioner Webb himself also was permitted to give an unsworn statement in which he stated his innocence, but accepted the jury's verdict, and in which he stated that he wanted to live so that he could be a part of his family members' lives. (Id. at 100-05.)

Petitioner Webb's trial counsel did not present any expert testimony at the mitigation stage, nor had they at the culpability stage. It is evident from the *dehors* evidence discussed below that trial counsel had retained a psychologist, Richard E. Sexton, Ph.D., who met with Webb four times before trial. (Doc. 80, Smalldon Decl. at 7.) In closing arguments at the mitigation stage, defense counsel stated that the jury was permitted to consider residual doubt, and asked the jury to consider "in fairness and mercy" that if Webb was permitted to live he could "do something," "be somebody," "be a father," "be a husband," "be a son," "be an uncle," "be a brother, and "be a friend." (T.p. at 119-20.)

Turning to the substantive claim, Petitioner Webb first raised the issue of the adequacy of representation during the mitigation stage in the post-conviction relief proceedings to the state trial court as part of PCRP issue thirty-eight. (Doc. 17, Appx. to Return of Writ, Tab S at 102-03.) Petitioner Webb expressly incorporated the *dehors* affidavit of Martin D. Yant in support of PCRP issue thirty-eight. (Id.) Petitioner Webb also submitted the affidavits of James Owen, Michael Coconis, and Jeffrey Smalldon, Ph.D., all of whom addressed the issue of defense

counsel's preparation for mitigation, to the trial court in the post-conviction relief proceedings in support of a motion for partial summary judgment. (Id., Tab U at 44-45.)

The trial court in its decision denied PCRP issue thirty-eight and stated that the affidavit of Yant, a licensed private investigator, did not contain specific operative facts to show that substantive grounds for relief existed and did not establish prejudice. (Id., Tab U at 42.) The trial court also addressed the affidavits submitted to support the motion for partial summary judgment. James Owen, a licensed attorney experienced in Ohio capital cases, addressed the prevailing standards of practice for defense attorneys in capital cases in Ohio and concluded that Petitioner Webb's counsel failed to meet the standards. (Doc. 80, Owen Aff.) As to the Owen affidavit, the trial court stated three things: (1) Owen did not suggest that trial counsel breached a duty which deprived Petitioner Webb of substantial justice; (2) Owen did not demonstrate prejudice; and (3) the Owen affidavit was not sufficient *dehors* evidence to preclude the application of *res judicata* because the legal arguments stated therein could have been stated on direct appeal. (Doc. 17, Appx. to Return of Writ, Tab U at 46-47.) Michael Coconis, a social worker and mitigation investigator who was hired to help prepare Petitioner Webb's case for mitigation, testified essentially that he lacked adequate time and resources to do a proper mitigation investigation for Petitioner Webb. (Doc. 80, Coconis Aff.) The trial court found that the Coconis affidavit failed to present mitigating evidence that would have altered the outcome of the trial, did not contain sufficient operative facts to demonstrate that Petitioner Webb was denied ineffective assistance of counsel, and failed to demonstrate prejudice. (Doc. 17, Appx. to Return of Writ, Tab U at 49.) Finally, Jeffrey Smalldon, Ph.D. testified in his affidavit about a psychologist expert report prepared at defense counsel's request by a Richard Sexton, Ph.D., for

14

use at Webb's trial, but which was not submitted. Dr. Smalldon criticized Dr. Sexton's report and stated that Dr. Sexton did not appear to have the experience necessary to provide a psychological evaluation in aid of the defense at a capital trial. Dr. Smalldon also stated that the defense attorneys should have presented expert mental health testimony about Webb during the mitigation phase. (Doc. 80, Smalldon Decl.) The trial court held in regards to Dr. Smalldon that his affidavit did not prove ineffective assistance of counsel but rather amounted to only a critique of trial strategy. The trial court also found that the Dr. Smalldon affidavit did not prove that Petitioner Webb's trial counsel was ineffective and did not prove prejudice. (Doc. 17, Appx. to Return of Writ, Tab U at 54-56.)

The court of appeals in the post-conviction relief proceedings held that *res judicata* could be applied to bar the PCRP issue thirty-eight. (Id., Tab X at 4.) It further found that Yant's affidavit did not remove the *res judicata* bar because it did not contain sufficient operative facts to show that substantive grounds for relief existed. (Id., Tab X at 9.) Finally, it found that the affidavits submitted in support of the summary judgment motion did not contain new evidence or information not available at trial. (Id., Tab X at 12-14.)

In this federal action, Magistrate Judge Merz, in the R&R and the Supplemental R&R, referred to his earlier conclusion in the R&R on Summary Judgment, subsequently adopted by this Court, that the claim was procedurally defaulted. (Doc. 35 at 59-60; doc. 74 at 33; doc. 83 at 9.) As he did in regards to the Second Claim for Relief, Petitioner Webb in his objections argues that habeas review should not be precluded because the state court erred in holding that the claims were barred by *res judicata* to the extent that the Petitioner Webb had submitted evidence *dehors* the record. (Doc. 79 at 16-17.) Petitioner Webb cites the four *dehors* affidavits

discussed above to support this Twelfth Claim for Relief.  It is proper for this Court to examine whether the Ohio state courts misapplied the *res judicata* doctrine.  See White, 431 F.3d at 526-27 (examining habeas claim on the merits after determining that Ohio misapplied the *res judicata* standard); Greer, 264 F.3d at 675 (stating in dicta that habeas review is not necessarily precluded when a state court's reliance on a procedural default rule is misplaced).  Nonetheless, the Court will not independently examine *res judicata* here.  Given the fact that the Sixth Circuit saw fit to analyze the claims in Hill and White on the merits based on the submission of similar *dehors* affidavits concerning mitigation, the Court instead will examine the Twelfth Claim on the merits.

To begin, it is useful to briefly state the legal standards applied when analyzing whether defense counsel have provided constitutionally effective representation at the mitigation phase of a death penalty case.  To establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), a petitioner must establish that counsel's performance was deficient and that the deficient performance so prejudiced the defense that the trial was rendered unfair and the result unreliable.  Id. at 687.  "In the context of a death sentence, the question of prejudice turns on 'whether there is a reasonable probability that, absent the errors, the sentencer–including an appellate court, to the extent it independently reweighs the evidence–would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'"  Hill, 400 F.3d at 314 (quoting Strickland, 466 U.S. at 695).

"[W]hen a client faces the prospect of being put to death unless defense counsel obtains and presents *something* in mitigation, minimal standards require some investigation."  Mapes v. Coyle, 171 F.3d 408, 426 (6th Cir. 1999) (emphasis in the original).  The Sixth Circuit strongly

has suggested that to render effective assistance in a capital case, trial counsel is required to begin preparations for mitigation before the conclusion of the guilt phase of the trial. See, e.g. Johnson v. Bell, 344 F.3d 567, 573 (6th Cir. 2003) (collecting cases); Glenn v. Tate, 71 F.3d 1204, 1207 (6th Cir. 1995). Of course, this Court must indulge a "strong presumption" that trial counsel's conduct fell within a wide range of professional competency. See Johnson, 344 F.3d at 573 (citation omitted). Trial counsel should not ignore known leads that might yield mitigation evidence, but they are not required to pursue every conceivable line of mitigation. Id. at 573-74.

Upon review of the *dehors* affidavits, the Court finds that Petitioner Webb has failed to prove that his trial counsel rendered such ineffective assistance of counsel at the mitigation stage to have caused him prejudice. Martin Yant testified in his affidavit as to the adequacy undertaken by trial counsel in preparation for trial generally. He did not address or question the adequacy of the mitigation investigation performed. The affidavit does not in any manner support a finding that defense counsel was constitutionally ineffective.

In his affidavit, attorney Owen sets forth the prevailing standards of conduct for defense attorneys in capital crimes in great detail, but states his opinion that Petitioner Webb's trial counsel was deficient in a most conclusory fashion:

> [I] have determined that Petitioner's trial and appellate counsel failed to meet the minimum standards of professional competence in a number of areas including . . . the conduct of . . . the mitigation/penalty phase of the trial . . . . In my judgment as a capital litigator in five (5) capital jury trials, this ineffective assistance of counsel resulted in the imposition of a sentence of death in a case in which the death penalty would probably not have otherwise been imposed.

(Doc. 90, Owen Aff. ¶ 5.) Owen contends that Petitioner Webb's defense counsel failed "to adequately investigate the circumstances of the offense and evidence of mitigation." (Id. ¶ 6.)

17

Regarding the type of mitigation investigation that is required, Owen states that investigation must begin before trial, that records must be collected, and friends, family, teachers and significant others must be interviewed, and that social histories and psychological examinations be conducted.  (Id. ¶ 13.)  Owen further states that the goal of mitigation is to explain the reason why the defendant committed the crime, not to try to make the defendant look like a "good" citizen.  (Id. ¶ 25.)  Owen, however, does not examine in any detail what investigation defense counsel undertook, does not address what additional investigation was needed, and does not identify any additional mitigation evidence defense counsel could have presented had they done an adequate investigation.

Michael Coconis, the mitigation investigator retained by defense counsel, provides more specific testimony in his affidavit about at least part of the investigation that was undertaken. Coconis discusses in some detail the factors which impeded his ability to perform what he considered to be an adequate investigation, including that he was not retained until after Petitioner Webb's trial had begun, that he had multiple other commitments which limited the time he was able to spend on the investigation, and that there was inadequate communication between himself, the attorneys, an the psychologist.  (Doc. 80, Coconis Aff. ¶¶ 13-36.)  He does not address what additional mitigation facts, if any, could have been discovered and presented to the jury if he had been able to conduct a more complete investigation.

Finally, Dr. Smalldon avers in his affidavit that psychological testimony was available and would have been critical to helping the jury understand how Webb, a man whom family members testified was helpful, compassionate and devoted to his family, could have intentionally ignited a fire intended to kill his wife and children.  (Doc. 80, Smalldon Decl. at 2-

7, 33.)  Dr. Smalldon reviewed in some detail Petitioner Webb's history, including his family

background, the death of his father, the accident that claimed the life of his wife and left his

young daughter seriously injured, and his sparse work history.  (Id. *passim*.)  Dr. Smalldon found

that Petitioner Webb was an individual with "low-average intelligence whose impoverished

educational history is reflected in his rather poor abilities in areas of core academic skill . . . .

His thinking is markedly concrete, and he has a great deal of difficulty when confronted with

problems the solution to which requires that he engage in more abstract or conceptual modes of

thinking and analysis."  (Id. at 29.)  Dr. Smalldon described Petitioner Webb as a person whose

fantasy construction of himself was in sharp contrast with reality.  (Id. at 33.)  For example,

Petitioner Webb saw himself as a workaholic; yet he never had much success at work and others

saw him as more interested in socializing than achieving financial goals.  (Id.)

> Dr. Smalldon theorized as to why Petitioner Webb might have started the fire:
>
> His decision to do so may have been an instance of what psychologists sometimes
> call "magical thinking," thinking that totally disregards important aspects of
> reality in the course of responding to some deep-seated emotional need.   In his
> fantasies, he might have seen the chaos and crisis and pain resulting from the fire,
> with himself emerging from this fantastic construction, as he had at other times in
> the past, as a kind of heroic figure, capable of demonstrating a great compassion
> and fortitude even under the most trying of circumstances.

(Id. at 34.)  Dr. Smalldon did not state this supposition with any degree of medical certainty.

> Dr. Smalldon summarized by stating that Petitioner Webb "is an individual with chronic

and deeply-rooted characterological problems" and that his "impression is of a Personality

Disorder Not Otherwise Specified, with prominent passive-agressive, paranoid and anti-social

features."  Dr. Smalldon averred with "reasonable psychological certainty, that it [was] more

probable than not" that expert testimony regarding Petitioner Webb's development of a serious

19

character disorder "would have proven critical to the entire defense enterprise of having a jury see Mr. Webb as a human being, albeit a flawed one, whose life continues to have value."  (Id.) He is critical of the trial defense attorneys for not providing the jury with "some explanation which might have allowed them to make sense of his conduct."  (Id. at 32.)

Defense counsel chose not to present expert mitigation testimony, but instead to rely on a residual doubt theory coupled with testimony intended to humanize Petitioner Webb by highlighting his familial relationships.  It should be noted that it was not per se unreasonable under Ohio law at the time of the trial to pursue a residual doubt strategy in mitigation.  See Williams v. Anderson, 460 F.3d 789, 804 n.4 (6th Cir. 2006).[3]  Upon consideration of the four dehors affidavits, the Court finds that the issues before it are whether trial counsel adequately prepared for mitigation and whether Petitioner Webb was denied effective assistance of counsel by the decision of counsel not to present expert mitigation testimony.  "[I]n order to establish prejudice, the new evidence that a habeas petitioner presents [in post-conviction proceedings] must differ in a substantial way-in strength and subject matter-from the evidence actually presented at sentencing."  Hill, 400 F.3d at 319.  The exact contours of counsel's mitigation investigation cannot be determined from the record before the Court.  It is known that defense counsel retained a psychologist to examine Webb four times before trial and that they presented testimony from Webb's family and friends.  The dehors affidavits fail to provide any additional factual matters relevant to mitigation that defense counsel could have presented to the jury.

---

[3] The Ohio Supreme Court subsequently ruled in 1997 that residual doubt was not a mitigating factor.  Williams, 460 F.3d at 804 n.4 (citing State v. McGuire, 80 Ohio St.3d 390, 686 N.E.2d 1112, 1123 (1997)).

The Sixth Circuit has stated that there is a direct relationship "between the quality of the background information and the quality of the mitigation strategy." Coleman v. Mitchell, 268 F.3d 417, 447 n.15 (6th Cir. 2001). Therefore, as to the issue of trial counsel's failure to present the testimony of an expert mitigation specialist, the crux of the issue is whether the investigation supporting the decision not to introduce the expert testimony was itself reasonable. Gillard, 445 F.3d at 895.

The failure to present mental health testimony is not necessarily evidence that defense counsel provided inadequate representation. In Wickline v. Mitchell, 319 F.3d 813 (6th Cir. 2003), defense counsel did not have Wickline subjected to a mental health examination at all. The record revealed that defense counsel consciously made the decision because Wickline did not want to be examined and because counsel feared the report would reflect negatively on Wickline. Id. at 820. Evidence of Wickline's mental health later was submitted with his petition for post-conviction relief. Id. at 821. The records stated that Wickline suffered from depression, but there was no evidence that depression played a part in the homicides for which he was convicted. Id. The Sixth Circuit found that Wickline had not proven that there was a reasonable probability that the result of the trial would have been different if defense counsel had presented expert mental health testimony or testimony concerning Wickline's troubled upbringing, including the death of his mother and a troubled relationship with his father. Id.

Here, defense counsel did retain a psychologist, Richard E. Sexton, Ph.D., who met with Webb four times before trial and prepared a report. That report is not in the record. It appears from Dr. Smalldon's summary of the Dr. Sexton's report that Dr. Sexton made findings concerning Webb, such that he "strives for immediate gratification of impulses," was

21

"insensitive to the feelings of other people," and could be "hostile" and "aggressive," that would

have been harmful to the mitigation case.  (Doc. 80, Smalldon Decl. at 33.)  As such, the Court

does not fault defense counsel's decision not to call Dr. Sexton as a mitigation witness.  As to

Dr. Smalldon, who was retained post-conviction, he addressed the personal hardships that Webb

endured, including the death of his father at a young age and the death of his first wife.

However, the jury was informed about those key events in Webb's life, and about their effect on

Webb, by the family and friend witnesses who testified at the mitigation hearing.  This weighs

against a finding that trial counsel was deficient.  See Gillard, 445 F.3d at 895 ("[B]ecause much

of Gillard's mitigating evidence was presented during the guilt phase, [the attorney] was not

deficient for failing to revisit this same evidence during the sentencing phase.").  Also, Dr.

Smalldon does not state with a reasonable degree of scientific certainty that Webb's conduct was

the result of or related to any mental defect.

Further, the Court is aware of no authority that required defense counsel to retain

multiple mitigation experts until they found one whose testimony would have been beneficial to

Webb.  In Taylor v. Mitchell, 296 F.Supp.2d 784 (N.D. Ohio 2003), the court was presented with

a battle of the experts somewhat similar to that here.  Defense counsel presented testimony at the

mitigation phase from a clinical psychologist who diagnosed defendant as having a paranoid

personality disorder.  A second expert retained during the post-conviction relief proceedings

determined that the defendant might have suffered from organic brain damage.  See id. at 807.

The court stated that defendant/petitioner had not established that it was unreasonable for the

trial attorney to have relied on the clinical impressions of the first expert.  Id.  "Counsel cannot

be responsible for procuring a second expert simply because one expert reached a result that

petitioner now asserts is inaccurate." Id.

The facts of this case simply do not reflect an inadequate level of performance by counsel or a medical or social history of the defendant that are substantially analogous to those found in cases in which the Sixth Circuit has held that defense counsel was deficient and the petitioner was prejudiced thereby. See, e.g., Glenn, 71 F.3d at 1208-11 (ineffective assistance found where counsel failed to investigate defendant's social history and failed to present evidence that defendant was abused as a child, was borderline mentally retarded, and had neurological impairment with evidence of brain damage, and counsel acquiesced in the presentation of damaging testimony by a court appointed expert without cross-examination); Frazier, 343 F.3d at 784 (ineffective assistance where defense counsel failed to do any investigation and failed to present any mitigating evidence despite the fact that they had knowledge from medical records that defendant had suffered a brain injury from falling off a ladder); Coleman, 268 F.3d at 450-53 (ineffective assistance of counsel found where counsel failed to complete investigation of defendant's background and such investigation would have revealed that defendant was abused, was raised in a home used as a brothel and gambling house, exposed to vodoo practice, group sex, bestiality, and pedophilia, had a low I.Q., and had a borderline personality disorder with the possibility of brain dysfunction). As such, the Court overrules Petitioner Webb's objections and denies the Twelfth Claim for Relief.

**E.    Remaining Claims for Relief**

As for Petitioner Webb's remaining objections, they are essentially rearguments of matters already considered and correctly decided in the R&R or the Supplemental R&R. They need not be discussed further here. The Court **DENIES** the remaining Claims for Relief.

**III.     CONCLUSION**

The Court therefore **OVERRULES** all of Petitioner Webb's objections; **ADOPTS** both the R&R, as modified by the Supplemental R&R, and the Supplemental R&R (docs. 74, 83), and consequently **DENIES WITH PREJUDICE** Petitioner Webb's Second Amended Petition Under 28 U.S.C.§ 2254 for a Writ of Habeas Corpus By a Person in State Custody (doc.  41).

IT IS SO ORDERED.


\_\_\_s/Susan J. Dlott\_\_
Susan J. Dlott
United States District Judge